UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| LORI E., | | CASE NO. C19-457 BAT |
| | Plaintiff, | |
| v. | | **ORDER AFFIRMING IN-PART, REVERSING IN-PART, AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |
| COMMISSIONER OF SOCIAL SECURITY, | | |
| | Defendant. | |

Plaintiff appeals a partially favorable decision in which she was found to be disabled no earlier than January 4, 2015, for her Supplemental Security Income application, and was found to be not disabled through her date last insured of March 31, 2011, for her Disability Insurance Benefits application. Tr. 873–885. She contends the ALJ erred by (**1**) failing to fully credit plaintiff's testimony; (**2**) failing to properly assess the medical opinions; (**3**) failing to consider plaintiff's cervical spine condition at step two of the sequential evaluation process; and (**4**) failing to fulfill the step five burden of showing a significant number of jobs existed that plaintiff could perform. Dkt. 10, at 2. The Court finds that the ALJ did not harmfully err by finding plaintiff not disabled through March 31, 2011, for her DIB application. The Court finds that the ALJ harmfully erred by declining to respond adequately to the scope of this Court's November 2017 remand order with respect to plaintiff's SSI application for the period after

March 31, 2011. The Court therefore **AFFIRMS in-part**, **REVERSES in-part**, and **REMANDS** for further proceedings on the SSI application post-March 31, 2011.

## BACKGROUND

Plaintiff is currently 59 years old, has a GED, and has worked as a bartender and a bar manager. Tr. 401, 406. In January 2014, plaintiff applied for SSI and DIB benefits, alleging disability as of **December 1, 2010**. Tr. 177. After benefits were denied, the United States District Court in November 2017 reversed and remanded, based on a residual functional capacity ("RFC") assessment of medium work with additional limitations, because the ALJ did not cite specific, clear and convincing reasons for discounting plaintiff's testimony as inconsistent with proof of mental-health improvement with medication, with allegations of disabling pain and mental-health symptoms, and with an inability to participate in activities alone. Tr. 965–76.

On remand, the ALJ found that plaintiff met the insured status requirements through **March 31, 2011**, and determined at **step one** that she had not engaged in substantial gainful activity since the alleged onset date of **December 1, 2010**; at **step two** that since the alleged onset date plaintiff had the severe impairments of **carpal tunnel syndrome, headaches, depression, anxiety, and history of substance abuse**; and at **step three** that these impairments did not meet or equal the requirements of a listed impairment. Tr. 876–78. The ALJ determined that since the alleged onset date plaintiff had the RFC to perform **light work**, except she can sit for 6 hours and stand and/or walk for 6 hours in an 8 hour workday, in addition to other limitations regarding posture, reaching, simple and routine tasks, and social contact. Tr. 878. The ALJ determined at **step four** that she could not perform any past, relevant work. Tr. 883. The ALJ noted that on **January 4, 2015**, plaintiff's age category changed from an individual closely approaching advanced age to an individual of advanced age. Tr. 883. The ALJ determined at

1 **step five** that prior to the date plaintiff's age category changed, jobs existed in significant
2 numbers in the national economy that plaintiff could have performed; and that beginning on the
3 date that plaintiff's age category changed, no jobs existed that plaintiff could perform. Tr. 883–
4 84. The ALJ therefore determined that plaintiff was not disabled prior to January 4, 2015, but
5 became disabled on that date through the date of decision. Tr. 885. With respect to plaintiff's
6 DIB application, the ALJ determined that plaintiff was not disabled from the alleged onset date
7 ("AOD") of December 1, 2010, through the date last insured ("DLI") of March 31, 2011. Tr.
8 885. The ALJ's decision is the Commissioner's final decision.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The ALJ supported with substantial evidence and did not harmfully apply the wrong legal standard to the determination that plaintiff was not disabled for purposes of her DIB application from the AOD of December 1, 2010, to the DLI of March 31, 2011. The ALJ did not, however, follow the scope of the Court's November 2017 remand order to reevaluate plaintiff's testimony for the period after March 31, 2011. The ALJ thus did not cite clear and convincing reasons for discounting plaintiff's testimony, and the medical record that relied on that testimony, as inconsistent with proof of improvement of mental health with medication, with disabling pain

and mental-health symptoms, and with an inability to leave home unaccompanied for the period after the DLI of March 31, 2011.

### 1. December 1, 2010 to March 31, 2011

#### a. Plaintiff's Testimony

The ALJ discounted plaintiff's testimony about the severity of her physical and mental limitations because there was little evidence to establish disabling mental or physical limitations from the AOD in December 2010 to the DLI in March 2011. Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons for declining to fully credit plaintiff's testimony and to find her disabled as of the alleged onset date of December 1, 2010. Dkt. 10, at 16; *see Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014). The Court disagrees with respect to the period of December 1, 2010 to March 31, 2011.

Plaintiff does not dispute the ALJ's observation that there are minimal treatment notes from the alleged onset date in December 2010 to the DLI in March 2011. Tr. 880. Nonetheless, plaintiff alleges that her mental and physical limitations became disabling when she sustained a sternal fracture and other injuries in a December 2010 car collision. Dkt. 10, at 3. According to plaintiff, with respect to physical limitations, although she was already being treated for bilateral carpal tunnel at the time of the accident, by 2012 she appeared to have hand impairment based on other causes and radial distribution and, beginning in 2016, she had two surgeries for her cervical stenosis and radiculopathy; with respect to mental limitations, plaintiff alleges that the 2010 car accident opened the door to memories of extensive abuse that led to treatment for anxiety and depression in 2013 after ending her use of methamphetamine. Dkt. 10, at 3 (citing Tr. 707 (Dec. 12, 2013 medical notes), 725 (Feb. 20, 2013 medical notes), 801 (Apr. 9, 2014 medical notes), 915 (Dec. 4, 2018 hearing testimony)).

With respect to physical limitations prior to the DLI, the ALJ noted that although plaintiff complained of neck pain, post-accident December 2010 radiographic imaging of her cervical spine showed only mild to moderate degenerative disc disease. Tr. 880 (citing Tr. 672 (Dec. 4, 2010 cervical scan notes)). Despite plaintiff's allegations of hand and neck pain, the ALJ noted that during a December 2013 complete physical examination, plaintiff reported that she felt "well with minor complaints" and did not complain of hand or neck symptoms Tr. 880 (citing Tr. 710). The ALJ noted that while plaintiff alleged migraine headaches, 2013 MRI and CT scans did not show any intracranial pathology and a 2014 neurological evaluation showed intact findings, which led the neurologist to suggest mental rather than physical treatment options. Tr. 880 (citing Tr. 860, 862). These benign, objective medical findings and plaintiff's presentation to medical providers with less severe complaints of physical pain years after plaintiff's DLI in March 2011 reasonably undermine plaintiff's testimony that her physical symptoms and resulting pain were disabling as of December 2010. *See Bray v. Commissioner of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009) (noting that claimant's allegations may be rejected if they "do not comport with objective evidence in her medical record"); *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002) (noting that an ALJ may consider ordinary techniques of credibility evaluation, including inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms).

With respect to mental limitations prior to the DLI, plaintiff does not dispute the ALJ's determination that there is minimal evidence of disabling mental-health complaints other than her assertion years later that her poor memory and PTSD-related symptoms began with the December 2010 car accident. Tr. 880–81. "An ALJ cannot be required to believe every

allegation . . . or else disability benefits would be available for the asking, a result plainly contrary to [the Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). An ALJ may consider whether the claimant takes medication or undergoes other treatment for the symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Although plaintiff intimates that she might not have sought mental-health treatment immediately after the car accident because she lost medical coverage at the precise time the accident occurred, Dkt. 10, at 17 (citing plaintiff's 2015 hearing testimony at Tr. 207), that factual assertion is not supported by the record. In 2015, plaintiff testified that she was receiving medical coverage through Labor and Industries when the car accident occurred in December 2010, and did not lose that coverage until after plaintiff received a legal settlement from that car accident, and even then she received coverage through DSHS "for a few months" after that. Tr. 207. As the claimant, plaintiff bears the burden of proving that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The ALJ reasonably determined that plaintiff's testimony about the severity of her mental impairments prior to the DLI was undermined by lack of evidence of complaints or treatment during the relevant period of December 2010 to March 2011 or that indicated disabling severity during that time period.[1] Tr. 880–81. This conclusion is further supported by a February 2013 medical note in which the provider noted a history of depression since around the birth of plaintiff's son in 1996 and opined that plaintiff's reported anxiety and depression were associated with her contemporaneous substance abuse and attempt to quit. Tr. 725.

---

[1] In November 2017, this Court found that "Plaintiff has not shown error in the ALJ's reasoning with respect to her allegations of cognitive limitations." Tr. 975.

The ALJ supported her decision to discount plaintiff's testimony about the period from the AOD of December 1, 2010 to the DLI of March 31, 2011 with substantial evidence and did not commit harmful legal error.

### b. Medical Opinions

Plaintiff attempts to backdate her reported physical and mental impairments to the December 2010 car accident by referring to a February 26, 2015 opinion by Judith Harvey, M.D., Tr. 810–12, and an October 20, 2018 opinion by Stephanie Shoemaker, A.R.N.P., Tr. 1853–55.[2] Plaintiff cannot demonstrate that the ALJ failed to support with substantial evidence or committed harmful, legal error regarding the decision to give little to no weight to these conclusory opinions that postdate the DLI by 4 to 7 years. *See Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) ("The opinion of a psychiatrist who examines the claimant after the expiration of his disability insured status, however, is entitled to less weight than the opinion of a psychiatrist who completed a contemporaneous exam."); *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (explaining that an ALJ need not discuss all evidence presented, but rather must offer an explanation only when she rejects "significant probative evidence").

An ALJ must cite clear and convincing reasons for discounting the uncontradicted opinion (with respect the period of December 2010 to March 2011) of a treating physician such as Dr. Harvey. *Ryan v. Commissioner of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). In the original 2016 decision, the ALJ expressed skepticism about the opinion of "treating" physician Dr. Harvey because, among other reasons: (1) although Dr. Harvey purported to treat plaintiff

---

[2] Plaintiff acknowledges that the only opinions in the record that suggest that plaintiff became disabled at her AOD in December 2010 and prior to her DLI in March 2011 were provided by Dr. Harvey in 2013 and by Advanced Registered Nurse Practitioner Ms. Shoemaker in 2018. Dkt. 10, at 7; Dkt. 12, at 4.

between December 2013 and January 2015, Dr. Harvey's name did not appear in the medical records from this clinic between July 2012 and January 2015, and did not appear in the treatment records until the date of the opinion in February 2015; (2) the form appeared to have been filled out in two different hand writings and it was not clear who in addition to Dr. Harvey filled out the form;[3] (3) Dr. Harvey did not include any specific clinical or objective findings to support her suggestions; (4) the form was inconsistent with the claimant's treatment records; and (5) Dr. Harvey appeared to have relied upon plaintiff's unreliable statement that she had been disabled since her December 2010 car accident. Tr. 187–188. In the 2019 decision, the ALJ gave Dr. Harvey's opinion only "some" weight because Dr. Harvey provided little explanation or support for the limitations she opined. Tr. 882. The Court finds that the ALJ stated clear and convincing reasons to discount Dr. Harvey's opinion for the period between December 2010 and March 2011: it was conclusory and relied entirely upon plaintiff's unreliable statement that she was completely disabled physically and mentally since the December 2010 car accident.[4]

For the same reasons, it was harmless error for the ALJ not to address nurse practitioner Ms. Shoemaker's opinion that plaintiff's disability began in December 2010. It strains plausibility to presume that Ms. Shoemaker, a nurse who first treated plaintiff in 2015 and gave

---

[3] The Court notes that a February 10, 2015 clinical note by plaintiff's mental health counselor at the same clinic, Michael Aquilino, M.H.C., stated that he had "[c]ompleted [the Social Security] paperwork and handed it off to nursing staff for the physician to complete." Tr. 816. Mr. Aquilino additionally stated that plaintiff's care and chart note were approved by his clinical supervisor Dr. Strosahl, not Dr. Harvey (who is a primary care physician, not a mental-health professional). *Id.*

[4] Plaintiff correctly notes that although Dr. Harvey opined primarily about plaintiff's mental health, the ALJ addressed primarily Dr. Harvey's opinion regarding physical limitations. Dkt. 12, at 5; *see* Tr. 882. This curiosity does not, however, work in plaintiff's favor. It appears implausible that Dr. Harvey, a primary care physician seemingly uninvolved with plaintiff's mental or physical healthcare, could in 2015 provide a definitive opinion linking plaintiff's mental impairments to the December 2010 car accident.

ORDER AFFIRMING IN-PART, REVERSING IN-PART, AND
REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS - 8

her opinion in 2018, could definitively state that plaintiff's disabling physical and mental limitations commenced in December 2010 without relying exclusively on unreliable statements by plaintiff.

The Court finds that the ALJ stated clear and convincing reasons for rejecting Dr. Harvey's opinion with respect to the period December 1, 2010 to March 31, 2011, and that any errors committed in reviewing Dr. Harvey's opinion or ignoring Ms. Shoemaker's opinion with respect to this period were harmless.

### c. Cervical Spine Condition at Step Two

Plaintiff argues that the ALJ erred by not including her cervical spine condition as a severe impairment at step two. Where an ALJ errs by not specifying an impairment as severe at step two of the sequential evaluation, her subsequent discussion of an impairment and assessment of limitations renders the error harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here the ALJ did not deny plaintiff's claim at step two. The ALJ resolved step two in plaintiff's favor and proceeded to the subsequent steps of the sequential evaluation, where she considered and discussed the evidence related to plaintiff's cervical spine condition. Tr. 879–80. As discussed earlier and as was noted by the ALJ, December 2010 radiographic imaging of plaintiff's cervical spine showed only mild to moderate degenerative disc disease. Tr. 672–73, 880. The ALJ noted that at a 2013 complete physical examination plaintiff did not complain of any neck symptoms. Tr. 710, 880. Moreover, the ALJ noted that since 2016 plaintiff underwent two neck surgeries and records from 2016 showed a worsening in her cervical radiculopathy. Tr. 879, 881. In sum, the ALJ considered plaintiff's cervical spine condition and noted the

worsening of that condition in 2016, i.e., after the ALJ determined that plaintiff was disabled as of 2015.

For the period between December 2010 and March 2011, the Court finds that any erroneous omission of plaintiff's cervical spine condition at step two of the sequential evaluation was harmless.

### d. Job Numbers at Step Five

Plaintiff argues that the ALJ erred at step five in relying on the vocational expert's ("VE's") testimony about the number of jobs plaintiff could perform. Dkt. 10, at 14–15. Specifically, plaintiff argues that the VE misinterpreted the employment statistics to determine the number of light, unskilled jobs existing in the national economy that plaintiff could perform. The Court finds that plaintiff has not demonstrated that the ALJ's reliance on the VE's testimony was unsupported by substantial evidence or was the result of harmful legal error.

"An ALJ may take administrative notice of any reliable job information, including information provided by a VE." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Id.* At the hearing, plaintiff's counsel objected neither to the VE's qualifications nor to the VE's job numbers. Tr. 918–29. The VE explained that his testimony was based not only on the Dictionary of Occupational Titles ("DOT"), but also on his more than 30 years of experience as a vocational expert, as well as research and resources developed by professionals in the field. Tr. 926. The ALJ reasonably relied on the VE's testimony and job numbers. Tr. 884. Plaintiff's counsel has presented nothing more than his lay assessment of the raw vocational data. That competing interpretation of the vocational data does not render the ALJ's reliance on the VE's testimony unreasonable, unsupported by substantial

evidence, or legally erroneous. *See, e.g., Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 18, 2014) ("[P]laintiff's lay assessment of the raw vocational data derived from Job Browser Pro does not undermine the reliability of the VE's opinion . . . ."); *Kremlingson v. Commissioner of Soc. Sec.*, 2018 WL 6706033, at *4 (E.D. Cal. Dec. 20, 2018) (rejecting challenge to VE's job number where claimant offered a lay interpretation of the vocational data).

### 2. After March 31, 2011

In November 2017, this Court rejected the ALJ's determination that plaintiff's testimony was inconsistent with proof of mental-health improvement with medication, allegations of disabling pain and mental-health symptoms, and an inability to participate in activities alone. Tr. 965–76. The Court reversed and remanded for further proceedings so the ALJ could correct this misevaluation of plaintiff's testimony and reassess the disputed medical opinions, "which were rejected for some of the same erroneous reasons Plaintiff's testimony was rejected, and also in part due to the providers' reliance on Plaintiff's subjective self-report." Tr. 976. With respect to the period after the DLI of March 31, 2011, the ALJ's failure to adequately address the Court's November 2017 order constituted harmful legal error.

First, the ALJ once again concluded that, with respect to depression and anxiety, "claimant herself has reported significant improvement in these issues with medication" but declined to address the extent of plaintiff's mental impairment before and after this alleged improvement, as well as to respond to the Court's invitation to examine plaintiff's consistent reporting that some anxiety and depression persisted even with medication. *Compare* Tr. 881 *with* Tr. 972. Second, the ALJ did not address the Court's concerns about plaintiff's reports of severe and constant pain and about the ALJ's selective citation to the record to show improvement of plaintiff's mental-health symptoms by mid-2014. *Compare* Tr. 880–81 *with* Tr.

974. Third, the ALJ noted but did not discuss plaintiff's consistent allegation, and this Court's invitation to examine, that plaintiff has for years been unable to participate in social activities alone and how such a social restriction might be reflected in her RFC. *Compare* Tr. 880 *with* Tr. 976.

The Court reverses and remands so the ALJ may respond adequately to the scope of the remand of this Court's November 2017 order with respect to the period after March 31, 2011, and issue a new decision regarding plaintiff's SSI application.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED in-part**, **REVERSED in-part,** and **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should respond to the scope of the remand in this Court's November 17, 2017 order, Tr. 965–76, with respect to plaintiff's SSI application for the period after March 31, 2011.[5]

DATED this 24th day of September, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

---

[5] Given that plaintiff was successful on her SSI application with respect to January 4, 2015, onward, and that her protective filing date is January 9, 2014, it appears that plaintiff may be reluctant to pursue her claim based solely on her SSI application. *See* Tr. 931–32. Plaintiff is encouraged to pursue, or not pursue, this matter in a manner that best preserves her rights, benefits, and time.

ORDER AFFIRMING IN-PART, REVERSING IN-PART, AND
REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS -
12